UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICTOR G. THERIAULT, Pro-Se Plaintiff          * CIVIL ACTION

VERSUS                                         * NO. 07-2978

FIA CARD SERVICES, N.A., Defendant             * SEC. "B"(3)

ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant/Counter Claimant FIA Card Services, N.A.("FIA") (Rec. Doc. 34). After review of the pleadings and applicable law, and for the reasons that follow, **IT IS ORDERED** that Defendant's Motion For Summary Judgment is **GRANTED.**

*BACKGROUND*

Plaintiff Victor Theriault entered into a an open-ended credit card account with FIA Card Services, N.A. (formerly known as MBNA America Bank, N.A.) in June 1998. The original cardholder agreement contained a provision stating that FIA reserved the right to make binding amendments to the cardholder agreement. (Rec. Doc. 34-6 at p. 8).  In 1999, FIA amended the cardholder agreement by adding a mandatory, binding arbitration provision. (Rec. Doc. 34-6 at pp. 12-13).  This provision required that a dispute brought by either party would be subject to binding arbitration with the National Arbitration Forum ("NAF").  (Rec.

1

Doc. 34-6 at p. 13).

Mr. Theriault had the opportunity to notify FIA that he did not consent to the arbitration provision and to revoke the amended cardholder agreement. (Rec. Doc. 34-6 at p. 13). Mr. Theriault did not notify FIA of his opposition to the amendment, and Mr. Theriault continued to make purchases with the credit card.

In July 2006, Mr. Theriault sent a letter to FIA disputing his account balance of $39,263.33. (Rec. Doc. 34-8). By December 2006, Mr. Theriault's account with FIA had become delinquent and FIA brought the matter to the NAF for arbitration. (Rec. Doc. 34-9). On April 3, 2007, NAF issued an arbitration award in favor of FIA for a total amount of $49,233.74. (Rec. Doc. 34-10).

Plaintiff Mr. Theriault commenced this action in the 22nd Judicial District Court for the Parish of Washington, alleging violation of the Truth In Lending Act ("TILA"), 15 U.S.C. sec. 1601 et seq. and breach of contract. Mr. Theriault also requested that the court vacate the arbitration award. FIA timely removed the matter to this Court.

FIA filed a Counter Claim on July 19, 2007 requesting that this Court confirm the arbitration award. Before the Court at this time is FIA's Motion for Summary Judgment, requesting that this Court dismiss the plaintiff's action with prejudice on

2

summary judgment and confirm the April 3, 2007 binding arbitration award in the amount of $49,233.74. (Rec. Doc. 34).

## *DISCUSSION*

### A.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.* Accordingly, conclusory rebuttals of the pleadings are

insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc*. 7 F.3d 1203, 1207 (5th Cir. 1993).

### B.    Arbitration Award

FIA asserts that the arbitration award was properly decided by the arbitrator and that Mr. Theriault has not established a basis for the arbitration award to be vacated by this Court.  FIA asserts that the arbitration award is valid and should be confirmed under 9 U.S.C.A. sections 10, 11:

**(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

**(1)** where the award was procured by corruption, fraud, or undue means;

**(2)** where there was evident partiality or corruption in the arbitrators, or either of them;

**(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

**(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

[**(5)** Redesignated (b)]

**(b)** If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

4

**(c)** The United States district court for the district wherein an
award was made that was issued pursuant to section 580 of title 5
may make an order vacating the award upon the application of a
person, other than a party to the arbitration, who is adversely
affected or aggrieved by the award, if the use of arbitration or
the award is clearly inconsistent with the factors set forth in
section 572 of title 5.


FIA argues that Mr. Theriault has failed to present any
evidence that meets the requirements for vacating an arbitration
award and has not alleged any fraud in procurement of the award.

Plaintiff Victor Theriault opposes FIA's Motion for Summary
Judgment, arguing that there was no valid arbitration agreement
between the parties and that the arbitrator acted arbitrarily and
without authority in granting the award. (Rec. Doc. 38) Mr.
Theriault claims that he had no arbitration agreement with FIA.
He denies that he received the Credit Card Agreement when he
opened the credit card account in 1998 or the 1999 amendment
requiring arbitration of disputes.

A court may vacate an arbitration award only if: (1) there
is fraud or corruption in procuring the award; (2) there is
partiality or corruption of the arbitrator; (3) an arbitrator's
misconduct prejudiced a party; (4) the arbitrator exceeded his
power; or (5) there is an imperfection in form or an evident
material mistake in calculating the award.  9 U.S.C. §§ 10-11.
Arbitration awards are *res judicata* and must be affirmed unless

grounds are established for the vacation or correction of the award. *Farmers Cotton Co. v. Savage*, 30289, p. 4 (La. App. 2 Cir. 6/26/98), 714 So. 2d 926, 928.

NAF found that the parties entered into a valid, written agreement to arbitrate which governed all the issues in dispute and that the evidence supported the issuance of an arbitration award in favor of FIA.  (Rec. Doc. 34-10).  The NAF decision has the effect of *res judicata*.  Mr. Theriault has failed to establish grounds upon which the arbitration award should be vacated.  Therefore, the Court renders judgment in favor of FIA confirming the arbitration award.

**C. Truth in Lending Act**

Mr. Theriault claims that FIA failed to respond to his June 2006 dispute letter in the manner required by 15 U.S.C. § 1666(a). He argues that his July 2006 dispute letter complied with the requirements of the TILA and that therefore FIA violated the TILA by initiating arbitration proceedings against him.

FIA contends that it did not violate the TILA by initiating arbitration proceedings against Mr. Theriault after he sent the July 2006 letter because Mr. Theriault's July 2006 dispute letter does not meet the requirements of the TILA.

Mr. Theriault claims that FIA violated the TILA when it failed to respond to his June 2006 dispute letter in the manner

6

required by 15 U.S.C. § 1666(a)and (b), which provide as follows:

(a)If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the address disclosed under section 1637(b)(10) of this title a written notice (other than notice on a payment stub or other payment medium supplied by the creditor if the creditor so stipulates with the disclosure required under section 1637(a)(7) of this title) from the obligor in which the obligor--

1. **(1)** sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,

**(2)** indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and

**(3)** sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error, the creditor shall, unless the obligor has, after giving such written notice and before the expiration of the time limits herein specified, agreed that the statement was correct--

**(A)** not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor, unless the action required in subparagraph (B) is taken within such thirty-day period, and

**(B)** not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof, indicated by the obligor under paragraph (2) either--

**(i)** make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or

**(ii)** send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing

7

statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.

After complying with the provisions of this subsection with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error.

(b) Billing error

For the purpose of this section, a "billing error" consists of any of the following:

**(1)** A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

**(2)** A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

**(3)** A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

**(4)** The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

**(5)** A computation error or similar error of an accounting nature of the creditor on a statement.

**(6)** Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

**(7)** Any other error described in regulations of the Board.

The 1666(a) response is only required if the obligor sends

written notice of his belief that a billing error exists on his account statement within sixty days of his receipt of the account statement containing the alleged billing error.  15 U.S.C.A. § 1666(a) (2008).  The obligor must also set forth the reasons for his belief that the statement contains a billing error.  15 U.S.C.A. § 1666(a)(3).  Here, however, Mr. Theriault's June 2006 letter did not give FIA notice of Theriault's belief that a billing error existed on his account.  Instead, Mr. Theriault's letter merely stated that he disputed the correctness of his entire account balance of $39,263.33.  In his letter, Theriault did not establish with any specificity an error in regard to an extension of credit, an erroneous charge for goods or services which he did not receive, an erroneous reflection of a payment made on the account, a computational error, or a failure to send an account statement.  Thus, Mr. Theriault failed to notify FIA of a billing error, as defined by section 1666(b).  Mr. Theriault did not set forth his reasons for believing that a billing error existed.  Accordingly, FIA was not required to follow the remedial steps required by 15 U.S.C. § 1666(a) before initiating arbitration.  Therefore, Defendant is entitled to summary judgment dismissing Plaintiff's claims for violation of the TILA and breach of contract.

*CONCLUSION*

For the aforementioned reasons, the Defendant's Motion for Summary Judgment is **GRANTED** and the plaintiff's action is hereby **DISMISSED WITH PREJUDICE**, consistent with the foregoing analysis. **IT IS FURTHER ORDERED** that the April 3, 2007 arbitration award issued by the National Arbitration Forum in favor of Defendant FIA Card Services, N.A. is confirmed, and Defendant FIA Card Services, N.A. hereby recovers judgment from the plaintiff Victor G. Theriault, in the amount of $49,233.74, plus judicial interest accruing from April 3, 2007.

New Orleans, Louisiana, this 16th day of July, 2008.

IVAN L.R. LEMELLE

UNITED STATES DISTRICT JUDGE